**7981**

PETER BOVONA.   :    NO. 7 9 8 1 .

*VS*        :    COURT OF APPEAL.

JULES OR GUILIANO FONTANA.:    PARISH OF ORLEANS.

------------

<u>Dinkelspiel. J.</u>

7981

<u>Dinkelspiel. J.</u>

This litigation arose originally in proceedings
before Division, 'B', where an attempt was made to
collect from the Administrator of the Succession
of Frank Fontana a claim out of the proceeds of a
fund derived from the Benevolent Order of Druids
in which the deceased, ~~Ini~~ Frank Fontana, was a
member at his death, in accordance with the laws
and regulations of that institution, was entitled
to the sum of $500.00., and that was the entire
amount of all of the funds the Administrator,Char-
-~~les~~ Papini, had in his possession.

This account was opposed by the present plain-
-tiff, and from a judgment adverse to his conten-
tions, and appeal was taken to this Court under
the No. 7404, and the judgment of Division, 'B',
was affirmed with an amendment, that opponent, as
a creditor, was recognized as such for the amount
of his claim, and it was there held, by this Court
that the death benefit provided by the Order of
Druids, under the constitution of that beneficiary
instututution, under the laws of this State, and under
it's own laws, was exempt from debts of the deceased,
and his family were the only parties entitled to
receive the benefits thereof? Citing Act No. 88
of 1918 and Act No. 189 of 1914.

That judgment becoming final it is attempted ~~kam~~
here, to collect, by writ of attachment, on the
grounds, that deceased being a non-resident, and a
citizen of the Kingdom of Italy, and oweing to
plaintiff the sum of $986.98; that his succession
had been opened in the Civil District Court, and
plaintiff had been recognized as creditor of said

succession in the aforesaid sum by a judgment of the Court of Appeal, and there being no assets in the State from which to pay plaintiffs said claim with interest and costs, they being wholly due and due and unpaid; and further, that the deceased posessed real estate estate situated in the Kingdom of Italy and other property, which property and effect had been taken possession of by one Jules Fontana claiming to be a brother of the deceased, Frank Fontana, and as such had assumed the quality of heir of said Frank Fontana, deceased, purely, simply and unconditionally, and is therefor, under the law, liable for all debts due by the deceased and specially to plaintiff as aforesaid, and being a non resident, he, plain- -tiff, was entitled to a writ of attachment, and garnishment proceedings were had against U. Marin -pni and Charles Papini, and they were ordered to answer interrogatories, under oath, catagorically, and in writing, within ten days after service, as the law directs.

On motion to dissolve, it is alleged, that plaintiff had obtained the writ of attachment without petition and citation, without a sworn affidavit, upon the allegation that Jules Fontana , mover, is absent and therefore unrepresented in this State, and that the said writ of attachment was wrongfully and improperly issued issued, for this: 1. that in the proceedings entitled Succes- -sion of Frank Fontana, No. 122.225, of the docket of the Civil District Court, there was offered and admitted in evidence on the opposition of Peter Bivona, plaintiff, to the account filed by Charles Papini, the duly legalized power of attorney

413

of said Jules Fontana, and which power of attorney was recognized by the Court of Appeal in the same succession, No. 7404 of it's docket; that in the said proceeding the Court of Appeal decided; 2.- that the money sought to be sequestered herein form no part of the estate of decedent and cannot be liable for it's debts. There were other grounds for dissolution of this attachment and garnishment proceeding, which it is unnecessary, in our opinion, to make note of.

The other garnishee, U. Marinoni, Jr., virtually in an exception urged the same plea as well as other pleas, which for the purposes of this case, it is, in our opin--ion, unnecessary to take cognizence of, but pleads by way of exception, that this Court, "is seized of knowledge of the decision of the Honorable, the Court of Appeal in the Succession of Frank Fontana, and pleads res adudicata as between the parties herein".

The account filed by the Administrator,proves beyond preadventure, that the only funds in the State of Louis--ina and in the Parish of Orleans, or elsewhere, is the one arising from the Order of Druids, of which the deceased had been a member, in the sum of $500.00., and which under the rules and laws of the Order, and under the acts of the Legislature of 1914 and 1916; the latter act being Act 88, and section 1, quoting that portion only which applies to this case, reads; " that the proceeds or avails or dividends of all life, including fraternal and co-operative, health and accident insurance shall be exempt from all liability for any debt except for the debt secured by a pledge of policy, or any rights under said policy that may have been assigned; or any advance pay ent made on or against said policy."

That act was a re-enactment of Act 23 of 1914, which 'exempts," the avails of all life, including fraternal and co-operative, health and accident insurance, shall be exempt from all liability for any debt, except for a debt secured by a pledge of said policy, or any rights under said policy that may have been assigned, or on any advanced payments made on such policy".

In the matter of the Succession of Josephine Porter, No. 7887, Court of Appeal, the syllabus there reads;- " An appellant may be said to have no interest in his appeal only when he cannot benefit by any change in the judgment from which he appealed."

In the body of the same opinion, the Court, goes on to say; "The issues here presented is the extent to which the proceeds of life insurance policies are exempt from liability from debt in this State. The deceased held two policies upon her own life, payable to her estate, and she was the beneficiary under two other policies upon the life of another person, who dies a few days before her.

"The proceeds of all four policies were collected by her executor, after her death, constituting the only assets in his hands, and certain creditors claimed the right to participate in the distribution in prefer- ence to the universal legatee?"

Then the Court, goes on; " And although life insurance made payable to the executors, administra- tors or assigns of the assured, forms part of his esate at his death, nevertheless exemption of the procee is or avails from all life insurance from liabilty for any debt,(except a debt secured by pledge or assignment of the policy) by the Act 189 of 1914 is not merely a personal exemption in favor of the assured, but enures

415

to the benefit of his heirs at law, and exempts the proceeds or avails of life insurance made apayable to the executors or assigns of the assured from liability of his debts or the debts of his succession at his death." Succession of De Blanc, 142. A. 27.

And further. the several policies in that case were on the life of the deceased and payable" to his wife if alive, if not, then to his executors, administrators or assigns, subject to the right of the assured to change the beneficiary . After the death of his wife the assured changes the beneficiary as to some of the policy and made that payable directly to his estate; otherwise he left unchanged. But the exemption was applied equally to all the policies". The docterine of that case was approved in the Succession of Clements, 146. L. 385.

In the 13. Court of Appeal. page 371, Succession of Alexander Mobery, the syllabus so far as applicable to this case; " such benefits form no part of the estate of the deceased.

Therefore, from these authorities, and from the acts of the legislature, and from the character and nature of this case, it would be futile to attempt a decision of the many fine points presented by Counsel on both sides. it will be sufficient to state it will be time to decide these when they properly arise.

In the case of Newman vs. Beer. 50. A. 323.- "Neither the law nor the courts are to be used as instruments to work injustice. To attempt this is to aggrevate the offending" **** *"Complete jurisdiction includes not only the power to hear and determine, but the power to enforce the determination; and as Courts are adverse to the exercise of authority

416

which they are unable to vindicate by process, will usually decline to exercise a jurisdiction, intended to be complete, which falls short, in the latter respect" State vs. North American Land Co. 106. L. 621.

" It is the function of courts to deal with actual issues. Those which may arise will not be anticipated. The grounds urged in the present case are not of such character as to permit of enforcement of the law in it's entirety". Duffy vs. New Orleans. 49. A. 114.

For the reasons herein assigned, it is ordered, adjudged and decreed, that the judgment of the lower Court be, and the same is hereby affirmed, with costs of both Courts.

(Judgment Affirmed)